**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 03-CR-331-14 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| WALDEMAR LORENZANA-CORDON, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

The government respectfully submits this Memorandum in advance of the sentencing of the defendant Waldemar Lorenzana-Cordon (hereinafter "the defendant"), which is currently scheduled for September 27, 2017, at 10:00 a.m. On March 22, 2016, the defendant was convicted following a trial, of one count of conspiracy to import five or more kilograms or more of cocaine into the United States, and to manufacture and distribute five kilograms or more of cocaine, knowing or intending that the cocaine will be unlawfully imported into the United States, and aiding and abetting the same, for his role as a leader of a Guatemala-based drug trafficking organization. For the reasons set forth below, the government respectfully requests a sentence of life imprisonment consistent with the United States Sentencing Guidelines' recommendation. Such a sentence would be sufficient to account for the factors set forth at 18 U.S.C. § 3553(a).

I.       Factual Background

   a. The Offense Conduct

As described in the pre-sentence investigation report ("PSR") dated July 21, 2017, and through evidence presented at trial, the third superseding indictment in this case charged the defendant and fourteen other co-conspirators with their involvement in an expansive international drug trafficking conspiracy that involved the distribution of tonnage quantities of South American cocaine to Mexican drug cartels via Guatemala for illegal importation into the United States. PSR ¶ 4; Third Superseding Indictment [ECF Docket No. 522.] The offense conduct in question occurred between March 1996 through April 2009. PSR at ¶ 3; Third Superseding Indictment [ECF Docket No. 522.]

The defendant was a leader of a Guatemala-based narcotics trafficking organization that included members of his family and close-associates within Guatemala and elsewhere. PSR ¶¶ 9-17, 20 Trial Tr. (Mar. 1, 2016 PM) at 26-56; Trial Tr. (Mar. 14, 2016 PM) at 45-46; Trial Tr. (Mar. 15, 2016 AM) at 18-20, 26; Trial Tr. (Mar. 10, 2017 PM) at 44-52. Over the course of approximately 13 years, from 1996 through April 2009, the defendant, along with his father, brothers, and other criminal associates, distributed thousands of kilograms of cocaine from South American sources of supply. Id. These narcotics were sold to Mexican cartels who illegally imported the drugs into the United States for consumption. PSR ¶¶ 10; Trial Tr. (Mar. 2, 2016 AM) at 72-73; Trial Tr. (Mar. 3, 2017 PM) at 68-70. The defendant's organization used violence, corruption, and intimidation in furtherance of their drug trafficking activities. PSR ¶¶ 15, 16; Trial Tr. (Feb. 22, 2016 AM) at 111; Trial Tr. (Feb. 23, 2016 AM) at 92-93; Trial Tr. (Mar. 7, 2017 PM) at 30-31; Trial Tr. (Mar. 10, 2016 PM) at 43; Trial Tr. (Mar. 14, 2016 AM) at 26-28.

As one of the leaders of the organization, the defendant was personally responsible for a number of subordinate members of the organization and engaged directly with Colombian sources of supply for cocaine, as well as Mexican buyers of cocaine.  PSR ¶¶ 10-17; Trial Tr. (Mar. 1, 2016 PM) at 64-67; Trial Tr. (Mar. 7, 2016 PM) at 27; Trial Tr. (Mar. 10, 2016 PM) at 42-43, 51-52; Trial Tr. (Mar. 14, 2016 PM) at 45-46; Trial Tr. (Mar. 15, 2016 AM) at 26-27.  The defendant routinely met with other major drug traffickers within Guatemala, and elsewhere, to negotiate, organize, and coordinate multi-hundred kilograms shipments arriving to the defendant's properties by a variety of transportation methods, including aircraft, boats, and vehicles with hidden compartments.  PSR ¶¶ 10-13; Trial Tr. (Mar. 1, 2016 PM) at 39-63, 76-77.  The defendant and his brothers maintained several ranches and other properties where cocaine shipments were unloaded, counted, and stored, before sale and distribution to Mexican cartels.  Id.  The defendant distributed multi-ton quantities of cocaine garnering millions of dollars in profits, including a one-time sale of a ton and a half of cocaine for which the defendant earned $10 million dollars.  Id. at ¶ 13.  Finally, the defendant and members of his organization also received millions of dollars in United States' currency for their cocaine distribution and trafficking activities.  PSR ¶¶ 11-14; Trial Tr. (Mar. 15, 2017 AM) at 15; Trial Tr. (Mar. 10, 2016 PM) at 53-43.

    b. Procedural History

On April 2, 2009, a grand jury sitting in this District returned a third superseding indictment, charging the defendant and 14 others with conspiracy to import five kilograms or more of cocaine into the United States, and to manufacture and distribute five kilograms or more of cocaine, intending and knowing that the cocaine will be unlawfully imported into the United States, and aiding and abetting, in violation of 21 U.S.C. §§ 952, 959, 960(b)(1)(B)(ii), and 963, and 18 U.S.C. § 2.

On March 22, 2016, the defendant was convicted at trial for conspiring to import, manufacture, and distribute five kilograms or more of cocaine knowing or intending that it would be illegally imported into the United States, in violation of 21 U.S.C. §§ 952, 959, 960(b)(1)(B)(ii), 963, and 18 U.S.C. § 2.

    c. The Presentence Investigation Report

On July 27, 2017, the Probation Office issued its final Presentence Investigation Report in this case. The government accepts the report's content without objection. The PSR concluded that the Guidelines range in this case was life imprisonment, with a statutory minimum of 10 years' imprisonment. PSR ¶¶ 35, 57-58.

The Probation Office determined that the defendant's adjusted offense level is 46, he is in Criminal History Category I, and the advisory Guidelines sentencing range is life imprisonment. PSR ¶¶ 32, 58. Using the 2008 sentencing guidelines, the Probation Office determined that the defendant's Base Offense Level is 38, based on an offense involving 450 kilograms or more of cocaine under the Guidelines §2D1.1(a)(5) and (c)(1). PSR ¶ 26. The Probation Office then identified a series of Specific Offense Characteristics that served to enhance the defendant's adjusted offense level, resulting in an adjusted offense level of 46. PSR ¶¶ 27, 28, 30.[1] Specifically, the Probation Office found that the defendant possessed a dangerous weapon, used aircraft other than a regularly scheduled commercial air carrier to import controlled substances, and was an organizer or leader of a criminal activity that involved five or more participants. PSR ¶¶ 27, 28, 30. As detailed herein, the government maintains that Probation correctly applied these

---

[1] Pursuant to the Guidelines Chapter 5, Part A (comment n.2), where the total offense level is calculated in excess of 43, the offense level is treated as level 43. PSR ¶ 36.

4

enhancements, and the corresponding Guidelines' recommendation of life imprisonment is appropriate.

      d.  <u>The Defendant's Objections to the PSR</u>

The defendant objected to material and factual inaccuracies in the PSI report. PSR Addendum. Among them, the defendant objects to the characterization of "co-defendants or co-conspirators," the application of a firearms enhancement, the application of a leadership enhancement, and the failure to demonstrate an ability to pay a fine. <u>Id.</u> The defendant also objects to Probation's use of the 2008 Sentencing Guidelines Manual. <u>Id.</u> Finally, the defendant objects to the Court's prior ruling denying a new trial based on the Court's multiple conspiracies ruling citing the "potential impact on sentencing." <u>Id.</u>

With respect to the defendant's objection to the Court's failure to grant his motion for a new trial, the government respectfully submits that the defendant's claims have already been addressed by the Court in previous filings. <u>See</u> ECF Docket No. 762 (Mar. 16, 2016) (Mem. Op. and Or. Denying Multiple Conspiracies Instruction); ECF Docket No. 931 (June 2, 2016) (Or. Denying Mot. for a New Tr.). The defendant's objection to the PSR is an attempt to re-litigate the Court's prior rulings and the Court should not consider it.

With respect to the defendant's other objections, the government respectfully submits that Probation appropriately applied the applicable enhancement that were supported by the trial evidence. Moreover, the government believes that Probation correctly applied the 2008 Guidelines, which are more favorable than the 2016 Sentencing Guidelines that contain two additional enhancements that would have been applicable to the defendant's conduct, further enhancing his sentencing calculations. For the reasons explained below, the government respectfully submits that the PSR correctly calculates the defendant's adjusted offense level and

that the corresponding sentencing recommendation is correct based upon the evidence presented at trial.

II.   Argument

   a.   The Governing Legal Framework

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall, 552 U.S. at 46; see also Rita v. United States, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50.

Further, it is a well-settled principle of conspiracy law that someone who jointly undertakes a criminal activity with others is accountable for their reasonably foreseeable conduct in furtherance of the joint undertaking." United States v. Saro, 24 F.3d 283, 288 (D.C. Cir. 1994). In attributing co-conspirators' acts to a criminal defendant, however, district courts must take great care. As Judge Friendly observed, "[a]lthough it is usual and often necessary in conspiracy cases for the agreement to be proved by inference from acts, the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding

7

existed as to each defendant." United States v. Borelli, 336 F.2d 376, 384 (2d Cir. 1964)(Friendly, J). To that end, the D.C. Circuit has established a "strict procedural mandate" that requires district courts to make explicit findings as to the scope of a defendant's conspiratorial agreement before holding him responsible for a co-conspirator's reasonably foreseeable acts. United States v. Childress, 58 F.3d 693, 722 (D.C. Cir. 1995) (per curiam).

Co-conspirator conduct in furtherance of a conspiracy that a defendant has joined should be attributed to the defendant at sentencing. U.S.S.G. § 1B1.3; Childress, 58 F.3d at 693. Proper attribution requires analysis of the scope of the conspiracy the defendant has joined and the scope of his or her conspiratorial agreement. Id. Upon ascertaining that the co-conspirators' conduct is in furtherance of a conspiracy to which the defendant agreed, the court should consider whether the co-conspirator's conduct was reasonably foreseeable to the defendant. Id. If the conduct was reasonably foreseeable, then the court should attribute the co-conspirators' conduct to the defendant at sentencing. U.S.S.G. § 1B1.3; Childress, 58 F.3d at 693.

b. The Specific Offense Characteristics Enhancements Are Appropriate

The defendant's conduct qualifies for the specific offense enhancements included in the PSR's calculations. At trial, this Court found that the defendant and his brother, Eliu Lorenzana-Cordon, jointly led a single conspiracy, with a common goal: to transport cocaine from Colombia by using three methods—go-fast boats, trucks with hidden compartments, and planes—onto their properties in Guatemala. Docket No. 762 at 3, Mem. Op. and Or. (Mar. 16, 2016). The Court also noted that their co-conspirators were "essentially business partners," sharing the same common goal of distributing this cocaine to members of Mexican drug trafficking organizations in exchange for millions of dollars in compensation. Id. The Court concluded that the defendant, his brother, and other co-conspirators all acted in furtherance of the conspiracy. Id. Further, the Court

identified a significant interdependence between the defendants and the other participants in the conspiracy. See id. at 3-4 (describing how the co-conspirators interactions and different roles within the conspiracy contributed to its success.)

The Probation Office correctly identified direct conduct by the defendant that qualified him for the specific offense enhancements identified below. Moreover, in addition to the defendant's actions, the trial evidence of the actions undertaken by his co-conspirator such as the use of weapons were reasonably foreseeable to the defendant and properly attributed. All of the actions of the defendant, including those of the defendant's co-conspirators were performed in furtherance of the conspiracy's ultimate goal of distributing narcotics and maximizing profits. Accordingly, the actions of the defendant's co-conspirators were reasonably foreseeable and are appropriate to the defendant's sentencing calculations in this case.

      1.     Enhancement #1 (A dangerous weapon (including a firearm) was possessed, 2D1.1(b)(1)).

A two-level enhancement for possession of a firearm applies under U.S.S.G. § 2D1.1(b)(1) because the defendant possessed firearms, including pistols and long-arms, during his involvement in drug trafficking activities. PSR ¶ 15. Sebastiana Cotton-Vasquez testified that on one occasion during a drug transaction, the witness observed at least "80 to 100" armed men on the defendant's property. Id.; Trial Tr. (Mar. 8, 2016 AM) at 41. Further, Cotton described a meeting with the defendant and several other high-ranking drug traffickers to discuss a theft of $3 million of narcotics. Id. at 42. At this meeting, the defendant and another participant drew pistols, "slammed" them down at the table in front of Cotton and an associate, and pointed the guns at them in a threatening manner. Id. at 43. Throughout the meeting, Cotton testified that the defendant touched the gun every time Cotton moved in her chair. Id.

Moreover, numerous witnesses testified that the defendant and his workers possessed weapons during the receipt and distribution of cocaine shipments arriving in Guatemala. PSR ¶ 15; Trial Tr. (Mar. 1, 2016 PM) at 54, 78-79; Trial Tr. (Mar. 10, 2016 PM) at 43; Trial Tr. (Mar. 14, 2016 AM) at 26-28. Because the trial evidence established the defendant's and his co-conspirator's possession of firearms during the course of and in furtherance of drug trafficking activities during the charged conspiracy, the two-level enhancement for possession of a firearm is appropriate.

    2.  Enhancement #2 (Use of aircraft, 2D1.1(b)(3))

A two-level enhancement for use of an aircraft other than a regularly-scheduled commercial air carrier to import controlled substances under U.S.S.G. § 2D1.1(b)(2)(A) applies because trial evidence established that the defendant and his co-conspirators used private aircraft during the conspiracy to import multi-hundred kilogram quantities of cocaine, which was stored at the defendant's properties. PSR ¶¶ 10, 29. The defendant started in the 1990s as a lookout for arriving airplane shipments and assisted in unloading aerial cocaine shipments with other co-conspirators. Id. Once the defendant assumed a leadership role, he coordinated aerial cocaine shipments on aircrafts such as Piper Navajos and Cessnas that would land and be unloaded at family properties such as La Melonera, La Calera, and Los Conejos, before be transported to other family properties for storage, including the defendant's ranch La Finquita. Trial Tr. (Feb. 23, 2016 PM) at 45, 50; Trial Tr. (Feb. 25, 2016 PM) at 50-51; Trial Tr. (Mar. 1, 2016 PM) at 30-46, 50-54, 58-63. Because the trial evidence established the defendant's use of aircraft, as well as his co-conspirators use of aircraft during the course of and in furtherance of drug trafficking activities during the charged conspiracy, the two-level enhancement for use of aircraft is appropriate.

3. <u>Enhancement #5</u> (Organizer or leader, 3B1.1(a))

An enhancement for being an organizer and leader of a drug conspiracy involving five or more participants under U.S.S.G. § 3B1.1(a) applies because the trial evidence established the defendant's role as a leader that had significant decision-making authority over workers in the organization. PSR ¶ 17. As a threshold matter, the trial evidence established an extensive, international, and multi-year conspiracy. <u>See</u> PSR ¶ 9-10. Moreover, the government's witnesses provided eyewitness accounts of the defendant's leadership status and the size and scope of the conspiracy. The commentary to § 3B1.1 outlines a number of factors for the court's consideration when evaluating the leadership characteristics, including: the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1(a), n.4. The commentary provides that "there can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." <u>Id.</u>

Here, evidence presented at trial established the defendant's role as one of the conspiracy's principal actors responsible for organizing and leading the organization's trafficking activities from his hometown in Zacapa, Guatemala, in a conspiracy spanning more than 13 years and involving criminal activity in countries such as Colombia, El Salvador, Guatemala, and Mexico. PSR ¶ 10. Beyond the geographic scope of the criminal activity, the trial evidence revealed an extensive conspiracy that involved a number of co-conspirators, including Colombian sources of supply, Central American transporters and receivers of cocaine, and buyers from Mexico-based drug cartels. <u>Id.</u>

As noted previously, Sebastiana Cotton-Vasquez testified that on one occasion during a drug transaction, the witness observed at least 80-armed men at the defendant's home. Id.; Trial Tr. (Mar. 8, 2016 AM) at 41.  Other co-conspirators recognized the defendant's leadership role in the organization as evidenced by his freedom to make independent decisions on pricing and investments.  Traffickers also viewed the defendant as someone with knowledge and access to narcotics.  For example, when testifying about the defendant's theft of a multi-hundred kilogram shipment of cocaine worth $3 million dollars, Cotton commented that "the big fish has eaten the little fish," stating explicitly that the defendant and his brother "were much more powerful" than she was.  Trial Tr. (Mar. 8, 2016 AM) at 44-45.  Marllory Chacon also testified to the defendant's role – noting that he employed other workers, sharing oversight for employees Guasha, Luisito, and Rigo Salguero.  Trial Tr. (Mar. 14, 2017 PM) at 54-55, 59-60.

Chacon also described multiple transactions with the defendant delivering tonnage quantities of cocaine to the defendant's properties, handled by the defendant's workers, for which the defendant and his brother paid $10 million in United States currency.  Trial Tr. (Mar. 15, 2017 AM) at 17.  Chacon also described cocaine shipments where the defendant and his brother invested in shipments of cocaine and other negotiations where the defendant and his brother bought tonnage quantities of cocaine for distribution outright.  Id. at 10, 23-25.  Chacon also described a visit to the defendant's property in La Reforma, Guatemala, where she observed 400 to 500 kilograms of cocaine and approximately $10 million in United States currency.  This testimony establishes that the defendant was a legitimate leader in the drug trafficking organization that exercised control over substantial amounts of narcotics and money.  This is corroborated by DEA Special Agent Daniel Mahoney's testimony that the investors in cocaine shipments are "the higher levels, the

people controlling the transport. Not necessarily the truck driver who is being paid little for his or her role, it's the higher level transporters." Trial Tr. (Mar. 9, 2016 PM) at 39.

Byron Linares and Otto Herrera also testified about the defendant's arsenal of workers to complete drug transactions. Trial Tr. (Feb. 24, 2017 AM) at 74; Trial Tr. (Mar. 3, 2016 PM) at 46-47, 67. Herrera believed that certain people were the defendant's workers evidenced by the nature by which "[the defendant] spoke to them and the way the workers spoke." Trial Tr. (Mar. 3, 2016 PM) at 67. Because the trial evidence established that the defendant enjoyed significant responsibility as a leader and organizer of drug trafficking activities in an international drug trafficking conspiracy, a four-point role enhancement is appropriate.

c. The Court Should Impose the Recommended Guidelines Sentence

The government respectfully submits that in this case, a life sentence recommended by the advisory Guidelines is appropriate to reflect the nature and circumstances of the offense and the history and characteristics of the defendant, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. See 18 U.S.C. § 3553(a)(1) and (2).

For over a decade, the defendant, his brother, and "various co-conspirators, worked together for the objective of selling cocaine in the United States markets, obtaining profits from those sales, and then distributing shares of those profits amongst themselves and the Colombian cartels who supplied the cocaine." Docket No. 762 at 2, Mem. Op. and Or. (Mar. 16, 2016). As a "core member of the conspiracy," the defendant served as a leader within an organization that made millions in profit from illegal narcotics. Id. The scourge of illegal narcotics and antecedent corruption ruined communities within the defendant's own country of Guatemala and the United States. See id. at 6.

In sum, the defendant played a vital role in the conspiracy, and made executive decisions to maximize distribution and profits, which included managing suppliers, distribution networks, and even authorizing the construction of a laboratory on his property to refine lower-quality arriving cocaine shipments. The defendant employed numerous workers and subordinates to further the drug trafficking enterprise. The defendant, his workers, and his co-conspirators possessed firearms to protect drug shipments during distribution, and bribed law enforcement officials to procure the release of associates arrested for drug trafficking and to prevent interdiction of their drug shipments by the authorities.

A sentence within the advisory Guidelines range is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). Thus, a term of imprisonment suggested by the Guidelines is necessary to serve the important purposes of sentencing.

A Guidelines sentence is also necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) & (C). "Sentencing courts are required to consider the need to deter others and the need to defer the defendant." United States v. Jackson, 848 F.3d 460, 466 (D.C. Cir. 2017), citing 18 U.S.C. § 3553(a)(2)(B) & (C). In this case, deterrence is of particular concern because the defendant openly participated in drug trafficking as part of a large, multi-year, international conspiracy that involved numerous people, including members of his own family. PSR ¶¶ 9, 17. A Guidelines sentence is therefore necessary to deter the defendant from committing further crimes and to deter others who are in a position to choose between a law-abiding life and a life of crime.

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a Guidelines sentence of life imprisonment for the defendant, a sentence necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a).

        Respectfully submitted,
        ARTHUR G. WYATT
        Chief
        Narcotic and Dangerous Drug Section
        U.S. Department of Justice
        Washington, D.C. 20530

By:   /s/ Michael N. Lang
       Michael N. Lang
       Stephen Sola
       Emily R. Cohen
       Trial Attorneys
       Narcotic and Dangerous Drug Section
       Criminal Division, U.S. Department of Justice
       Washington, D.C. 20530
       Telephone: (202) 514-0917

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a copy of the foregoing pleading was served to counsel of record for the defendant via the Court's CM/ECF filing system

            /s/ Michael N. Lang
            Michael N. Lang
            Stephen Sola
            Emily R. Cohen
            Trial Attorneys
            Narcotic and Dangerous Drug Section
            Criminal Division, U.S. Department of Justice
            Washington, D.C.  20530